UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

HYUNWOO HWANGBO, JAE YOUNG CHEON, and
JAEHOON CHO, *on behalf of themselves and others
similarly situated*,

                              Plaintiffs,                    **REPORT &
                                                             RECOMMENDATION**
              *v.*                                           19-CV-6356-DLI-SJB

KIMGANAE, INC., *doing business as* KIMGANAE;
JOON HO KIM; HYANG KYUM KIM; and KI DONG
KIM;

                              Defendants.
----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Plaintiffs Hyunwoo Hwangbo ("Hwangbo"), Jae Young Cheon ("Cheon"), and

Jaehoon Cho ("Cho," and collectively, "Plaintiffs") commenced this Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL") case against Defendants

Kimganae, Inc. ("Kimganae"), Joon Ho Kim, Hyang Kyum Kim, and Ki Dong Kim (the

"Individual Defendants" and, collectively, "Defendants") on November 8, 2019.[1]

Plaintiffs seek conditional certification of a FLSA collective of all current and former

employees who worked for Defendants between November 8, 2013 to the present.[2]

Defendants have not opposed the motion.  The Honorable Judge Dora Irizarry referred

---

[1] Collective Action and Class Action Compl. dated Nov. 8, 2019 ("Compl."), Dkt. No. 1; Am. Collective Action and Class Action Compl. dated Apr. 14, 2020 ("Am. Compl."), Dkt. No. 16.

[2] Notice of Mot. dated Jan. 1, 2021 ("Mot."), Dkt. No. 20; Proposed Notice of Pendency ("Proposed Notice"), attached as Ex. 4 to Aff. in Supp. of Mot. dated Jan. 1, 2021 ("Greben Aff."), Dkt. No. 21 at 2.

the motion to the undersigned for report and recommendation.[3]  For the reasons stated below, the Court respectfully recommends that Plaintiffs' motion be granted in part and denied in part.

STANDARDS FOR MOTION FOR COLLECTIVE CERTIFICATION

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  The statute requires employers to pay employees a minimum hourly wage, *id.* § 206, and an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed," *id.* § 207.  Section 216(b) of FLSA provides a private right of action to an employee to recover unpaid minimum wages or overtime compensation from an employer who violates the Act's provisions. The same section permits plaintiffs to have their cases certified as a collective actions on behalf of "themselves and other employees similarly situated."  *Id.* § 216(b).  Unlike Rule 23 class actions, a collective action is "opt in," meaning, to join the suit, a person must "give[ ] his consent in writing to become such a party" and file that "consent in the court in which such action is brought."  *Id.*

A two-stage inquiry determines whether a motion to certify a FLSA collective action should be granted.  *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010).  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

---

[3] Order Referring Mot. dated Jan. 4, 2021.

"The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).  "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs *do in fact exist*." *Id.* (second emphasis added).

"In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required.  This first stage determination is based on the pleadings, affidavits and declarations[.]" *Bifulco*, 262 F.R.D. at 212 (alteration in original) (first quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); next quoting *Hens v. Client Logic Operating Corp.*, No. 05-CV-381, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members.").  That being said, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (alteration in original) (quoting *Camper v. Home Quality Mgmt. Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000)).  Ultimately, however, although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof." *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).  Consistent with this low standard of proof, "'[a]t th[is] initial assessment stage, . . . the Court does not resolve factual disputes, decide substantive issues going to

3

the ultimate merits or make credibility determinations.'" *Summa*, 715 F. Supp. 2d at 385 (quoting *Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008)).[4]

"Because the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[ ] conditional certification.'" *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (alteration in original) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.,* No. 09-CV-332, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).  Should the plaintiff make the requisite initial showing, he is entitled to conditional certification, and a court may "authorize a[] FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action." *Gortat v. Capala Bros.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, 2010 WL 1423018 (Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).

Following the distribution of the notice, the completion of any opt-in period, and any additional discovery, the Court undertakes the second stage of the two-part Section 216(b) inquiry.  "[A]t the second stage, the district court will, on a fuller record, determine . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555 (emphasis added).  "The action may be

---

[4] The modest factual showing "is 'considerably less stringent' than the requirements for class certification under Rule 23." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (quoting *Avila v. Northport Car Wash, Inc.*, No. 10-CV-2211, 2011 WL 833642, at *3 (E.D.N.Y. Mar. 10, 2011)).  That is, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action" under Rule 23. *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009) (quoting *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 25, 2006)).

'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs reside in Queens, New York.  (Am. Compl. ¶¶ 8–10).  Kimganae is a New York corporation with a principal place of business at 39-12 Union Street, Flushing, New York, which operates as a Korean restaurant.  (*Id.* ¶¶ 3, 11).  The Individual Defendants are "principals and managers of Kimganae."  (*Id.* ¶ 12).  Plaintiffs worked as waiters at Kimganae.  (*Id.* ¶ 33).

Plaintiffs allege that they were not paid minimum wage, overtime compensation, and spread-of-hours pay for their work for Defendants.  (Aff. of Hyunwoo Hwangbo dated Jan. 1, 2021 ("Hwangbo Aff."), Dkt. No. 21-1 ¶ 2; Aff. of Jae Young Cheon dated Jan. 1, 2021 ("Cheon Aff."), Dkt. No. 21-2 ¶ 2; Aff. of Jaehoon Cho dated Jan. 1, 2021 ("Cho Aff."), Dkt. No. 21-3 ¶ 2).  They contend that Defendants implemented such unlawful policies for "virtually all non-managerial staff."  (Hwangbo Aff. ¶¶ 2, 4, 7, 11; Cheon Aff. ¶¶ 2, 4, 7, 10; Cho Aff. ¶¶ 2, 4, 7, 11–12).  For example, they contend that all employees "were required to sign inaccurate time . . . [and] pay records" that misrepresented the break time Defendants gave them and the total paid.  (Hwangbo Aff. ¶ 4; Cheon Aff. ¶ 4; Cho Aff. ¶ 4; Am Compl. ¶¶ 46–47).  Further, all waiters had $7.50 per shift deducted from their tips to purchase sodas for kitchen workers and were forced to buy $50 of Starbucks coffee for others when they were late.  (Hwangbo Aff. ¶ 5; Cheon Aff. ¶ 5; Cho Aff. ¶ 5; Am. Compl. ¶¶ 48–49).

Plaintiffs provide examples of Defendants' allegedly unlawful employment practices.  Hwangbo states that from September 2013 through May 2015, he worked four 13-hour shifts per week but was only paid $50 per shift.  (Hwangbo Aff. ¶ 3).  From

May 2015 through December 2016, he worked an additional four hours per week but was not paid any additional wages, and, during this time, Defendants deducted $40 per shift from his wages to pay other delivery workers. (*Id.*). From December 2016 through August 2019, Hwangbo worked five 13-hour shifts per week and was paid $70 per shift. (*Id.*). Similarly, Cheon alleges that he was paid $50 per 13-hour shift, and that he worked up to five shifts per week during his employment from September 2013 to August 2019. (Cheon Aff. ¶ 3). Cho worked as a "tips only" waiter from April 2017 to December 2018 and received no wage compensation from Defendants during that time. (Cho Aff. ¶ 3). In January 2019, he began working three 13-hour shifts per week for $30 per shift, until two weeks prior to the end of his employment, when he worked five 13-hour shifts per week. (*Id.*).

Plaintiffs also detail the experience of nine employees who experienced similar unlawful employment practices. (*See, e.g.*, Hwangbo Aff. ¶¶ 8–10; Cheon Aff. ¶¶ 8–9; Cho Aff. ¶¶ 8–11). These employees are primarily other waiters and cashiers. (Hwangbo Aff. ¶¶ 8–10; Cheon Aff. ¶¶ 8–9; Cho Aff. ¶¶ 8–11). They were also paid below the minimum wage, were denied overtime compensation and spread-of-hours compensation, were forced to sign inaccurate time and wage records, and had various deductions taken from their wages. (Hwangbo Aff. ¶¶ 8–10; Cheon Aff. ¶¶ 8–9; Cho Aff. ¶¶ 8–11).

Plaintiffs commenced this action on November 8, 2019. (Compl.). They assert ten causes of action: two FLSA claims for failure to pay minimum wage and overtime compensation, respectively, (Am Compl. ¶¶ 64–72), and eight NYLL claims, including for failure to pay minimum wage, pay overtime compensation, provide accurate wage notices and statements, and provide spread-of hours pay; for retaining tips; for forcing

employees to share tips with other non-service employees; and for making unlawful deductions from Plaintiffs' pay, (*id.* ¶¶ 73–107). Plaintiffs moved for conditional certification of a collective action pursuant to FLSA, 29 U.S.C. § 216(b), "on behalf of all non-exempt employees employed by Defendants within the last six years." (Mot. at 1). Specifically, Plaintiffs seek:

(1)   Conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants within the last six years;

(2)   Court-facilitated notice of this FLSA action to Covered Employees, including consent form (opt-in form) as authorized by the FLSA;

(3)   Approval of the proposed FLSA notice of this action and the consent form;

(4)   Approval of a sixty-day notice period;

(5)   Approval for Plaintiffs' Counsel to send a Court Approved reminder notice halfway through the opt-in period;

(6)   Approval of the proposed FLSA reminder notice;

(7)   Permission to send the notice, in English, via U.S Mail, e-Mail, and text message;

(8)   Production in Excel format of the names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, dates of employment, and social security numbers;

(9)   Posting of the Notice, along with the consent form, by Plaintiffs' counsel at any time in a conspicuous public location at the Defendants [principal] place of business where Covered Employees are employed during regular business hours;

(10)   Equitable tolling of the statute of limitations until such time that Plaintiffs' counsel is able to send notice to potential opt-in Plaintiffs;

(11)   Such other and further relief, as this Court may deem appropriate.

(Mot. at 1–2). The Court directed that any opposition to the motion be filed by March 22, 2021. (Order dated Mar. 8, 2021). Defendants did not oppose the motion.[5]

---

[5] Even if unopposed, the Court undertakes an independent analysis to determine whether a collective should be certified. *E.g., Hanming Feng v. Soy Sauce LLC,* No. 15-CV-3058, 2016 WL 1070813, at *1 (E.D.N.Y. Mar. 14, 2016).

DISCUSSION

I.    Conditional Certification of Collective Action

Plaintiffs seek conditional certification of a collective of "all non-exempt employees employed by Defendants within the last six years." (Mot. at 1). Plaintiffs define these "covered employees" as those who "worked as Tipped Workers and/or Restaurant Employees." (Mem. of Law in Supp. of Mot. dated Jan. 1, 2021 ("Mem."), Dkt. No. 21, at 6). To obtain conditional certification, Plaintiffs must demonstrate that they are similarly situated to the potential opt-in plaintiffs—all the current and former covered employees—and that such individuals were subject to the same unlawful policies.

At this stage, the Court must only consider whether the alleged policies violate federal law. "Collective actions under the FLSA encompass only FLSA violations." *Hanming Feng*, 2016 WL 1070813, at *4 (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011)); *accord Myers*, 624 F.3d at 555 ("The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to *whether a FLSA violation has occurred.*" (emphasis added)); *Zeledon v. Dimi Gyro LLC*, No. 15-CV-7301, 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016) ("[A] plaintiff must at least make a facially adequate showing that putative members of the collective are similarly situated 'with respect to the FLSA violations the named plaintiff alleges[.]'" (alterations omitted) (quoting *Bijoux v. Amerigroup N.Y., LLC*, No. 14-CV-3891, 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (Sept. 15, 2015))). "To bring state-law claims on behalf of others against Defendants,

8

Plaintiff[s] must seek class certification pursuant to Rule 23." *Hanming Feng*, 2016 WL 1070813, at *4.

FLSA requires employers to pay employees for all time worked. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.223(a) (stating that "hours worked" under § 207 "include (1) [a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) [a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so"). In addition, FLSA requires employers to pay an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a). And FLSA requires that employees be paid at least a minimum hourly rate. *Id.* § 206(a)(1). FLSA allows employers to pay tipped restaurant employees a cash wage less than the statutory minimum, if the employees receive gratuities sufficient to compensate for the difference. *Id.* § 203(m)(2)(A).

Plaintiffs' declarations establish that they were subject to a policy that runs afoul of FLSA, namely Defendants' failure to pay minimum wage and overtime compensation. There are multiple declarations based on personal observations that corroborate each other. Each plaintiff alleges that he was paid below the minimum wage and was not paid time and a half for the overtime hours worked. They support these allegations with details regarding the length and number of their weekly shifts and total wages per shift. (*See, e.g.*, Hwangbo Aff. ¶ 3; Cheon Aff. ¶ 3; Cho Aff. ¶ 3). Hwangbo alleges he was paid $50 per 13-hour shift, and worked four shifts per week, from September 2013 through May 2015. (Hwangbo Aff. ¶ 3). This amounts to $200 per week for 52 hours of weekly work (less than $4 per hour), which could not possibly come close to the amount

required under FLSA's minimum wage requirement.[6]  From May 2015 through December 2016, Hwangbo worked four additional hours per week beyond his usual schedule but was not paid any extra wages; during this time, Defendants also deducted $40 per shift from his wages to pay other delivery workers.  (Hwangbo Aff. ¶ 3).  From December 2016 through August 2019, he worked five 13-hour shifts per week and was paid $70 per shift, (*id.*), amounting to an average of $5.38 per hour for 65 hours of work per week, again well short of what is required by FLSA.  Similarly, Cheon alleges that he was paid $50 per 13-hour shift, and that he worked up to five shifts per week during his employment between September 2013 and August 2019.  (Cheon Aff. ¶ 3).

Unlike Hwangbo and Cheon, Cho was a tipped employee from April 2017 to December 2018, before he worked as a salaried employee from January 2019 through April 2019.  (Cho Aff. ¶ 3).[7]  Cho states he did not receive any compensation from

---

[6] The Court applies the highest wage—whether state or federal—in determining whether there is a FLSA minimum wage violation.  29 C.F.R. § 778.5.  The New York City minimum hourly wage rate for employers with eleven or more employees was $11.00 for December 31, 2016 through December 30, 2017; $13.00 for December 31, 2017 through December 30, 2018; and $15.00 since December 31, 2018, N.Y. Lab. Law § 652(1)(a)(i), while the federal minimum wage rate was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C).  *Toribio v. Abreu*, No. 18-CV-1827, 2018 WL 6363925, at *6 n.3 (E.D.N.Y. Nov. 15, 2018), *report and recommendation adopted*, 2018 WL 6335779 (Dec. 4, 2018).  The New York City minimum hourly wage rate for employers with ten or fewer employees was $10.50 for December 31, 2016 through December 30, 2017; $12.00 for December 31, 2017 through December 30, 2018; $13.50 for December 31, 2018 through December 30, 2019; and $15.00 since December 31, 2019.  N.Y. Lab. Law § 652(1)(a)(ii).  Even if these minimum wage rates for small New York City employers are applied, Plaintiffs would still have been significantly underpaid.

[7] "The FLSA permits employers to take a tip credit up to 50% of the minimum wage except that the credit 'may not exceed the value of the tips actually received by the employee.'"  *Shahriar*, 659 F.3d at 239–40 (quoting 29 U.S.C. § 203(m)).  Further, "[f]or tipped employees, the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit."  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015).

Defendants while he was a tipped employee, which meant that he was paid only in tips, which would likely be well below minimum wage in violation of FLSA. (Cho Aff. ¶ 3). Therefore, Plaintiffs have made a sufficient showing that Defendants' policy not to pay minimum wages or overtime compensation extended to both tipped and non-tipped waiters. *See, e.g.*, *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 267 (D. Conn. 2020) (finding plaintiffs "clearly met" their minimal burden for the purposes of conditional certification where they "alleg[ed] that both tipped and non-tipped employees were similarly undercompensated as part of Defendants' common policy which violated the FLSA").

And, thus, the Court has a basis to conclude that Plaintiffs were subject to an illegal wage-and-hour policy. Plaintiffs also demonstrated that this FLSA-violative policy also extended to other waiters employed by Defendants. Hwangbo identifies by name three other waiters with whom he says has spoken recently about their wages and hours. (Hwangbo Aff. ¶¶ 8–10). Each told him that they were or are paid below minimum wage and were or are not paid overtime compensation. (*Id.*). Specifically, Jun Hyeok Choi, with whom Hwangbo "regular[ly]" continues to spend time as friends, told Hwangbo that he was paid a "small lump sum" amount (less than minimum wage) per 13-hour shift, that he worked more than 40 hours per week but was not paid overtime or spread-of-hours compensation, and had various deductions taken from his wages. (*Id.* ¶¶ 8–9). He says these practices continue to this day. (*Id.* ¶ 9). Joon Sung Na, a waiter who left Defendants' employ in 2016, told Hwangbo that while he worked for Defendants, he was not paid minimum wage or overtime compensation and had illegal deductions taken from his salary. (*Id.* ¶ 10(a)). He and Hwangbo "continue to have regular discussions about it to this day." (*Id.*). Finally, Jong Min Kim, another

waiter formerly employed by Defendants, and Hwangbo spoke in the fall of 2020 about lack of overtime compensation, improper deductions, and false records they were coerced into signing.  (*Id.* ¶ 10(d)).

Cheon and Cho have remained friends and in contact with a waiter named Manwoo Lee, who told them in November 2020 that, during his employment for Defendants in 2017 and 2018, he was paid less than minimum wage, denied overtime compensation, and had improper deductions taken out of his wages.  (Cheon Aff. ¶ 9; Cho Aff. ¶ 8).[8]

Plaintiffs contend that cashiers were subject to the same policy.  Hwangbo is friends with Seoha Yim, who works as a cashier for Defendants, and sees her at least weekly.  (Hwangbo Aff. ¶ 10(b)).  Yim told Hwangbo that she is currently paid $13.50 per hour—less than minimum wage.[9]  (Hwangbo Aff. ¶ 10(b)).  Yin expressed the same to Cho.  (Cho Aff. ¶ 9).  Cho also spoke to another cashier, Ah Yeon Lee, who similarly told Cho that she was paid "substantially less than minimum wage."  (*Id.* ¶ 10).

These details are sufficient to conclude that Defendants' policy of paying employees less than the minimum wage and their illegal overtime policy extended to all waiters.  Plaintiffs have also demonstrated that Defendants' illegal minimum wage policies extended to all cashiers.  *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 115 (S.D.N.Y. 2015) ("[T]he plaintiff has provided sufficient detail to establish that other waiters are similarly situated. . . .  [B]oth the plaintiff and Mr. Zsolt identify other

---

[8] Cheon also alleges that his friend, Peter Min, was subject to the same policies, such as being paid less than minimum wage and not being compensated for overtime. (Cheon Aff. ¶ 8).  But the affirmation does not state what position Min held.

[9] *See* N.Y. Lab. Law § 652(1)(a).

waiters by name, allege these waiters were similarly paid below the minimum wage, and explain the basis for their belief.  The plaintiff states that 'she [knows] that the defendants did not pay the waiters any wages until 2012 because we would speak to each other and complain about the fact that the defendants paid us no wages[.]'  Mr. Zsolt identifies by first name four other waiters who 'all shared a similar schedule with me' and who he knows were also paid $4.65 per hour[.]" (first alteration in original) (citations omitted)); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 448 (S.D.N.Y. 2013) ("Kim also has adduced evidence that he and other kitchen staff members were compensated in a similar manner. . . . Kim thus has adequately alleged that he and the other kitchen staff members were victims of a common compensation policy that violated the FLSA." (citations omitted)).

However, Plaintiffs have not shown they are similarly situated to kitchen staff or all other employees of Defendants.  Plaintiffs have not met the modest factual showing necessary to demonstrate that kitchen staff or other uncategorized employees were victims of a common policy or plan that violated the law.  Cho states he had a conversation with a kitchen worker, Chun Song Piao, who told Cho he was not paid minimum wage or overtime compensation, and that he was also "coerced" into signing false time and pay records.  (Cho Aff. ¶ 11).  There are no details about the length of his shifts or the amount he was paid per hour or shift.  Without further information, the Court cannot determine whether kitchen workers, as a group, were subject to the same unlawful policies.  Similarly, the vague, conclusory allegations that "non-managerial staff" or "all" employees were subject to the same policies, (*see, e.g.*, Hwangbo Aff. ¶¶ 2, 7; Cheon Aff. ¶¶ 2, 7; Cho Aff. ¶¶ 2, 7), does not rise to the level of a modest factual showing needed to include them in the collective, *see, e.g.*, *Jian Guo Yang v. Zhou's*

*Yummy Rest., Inc.*, No. 19-CV-5203, 2020 WL 2738403, at *2–4 (E.D.N.Y. Apr. 28,

2020) (finding factual allegations insufficient to certify the FLSA collective); *Joshi v.*

*Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785, 2018 WL 1135566, at *4 (S.D.N.Y.

Mar. 1, 2018) (finding vague descriptions of conversations with other waitstaff about

"work and pay" insufficient to meet factual burden); *Qing Gu v. T.C. Chikurin, Inc.*, No.

13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) ("Plaintiffs make only

general allegations that other employees of defendants were denied minimum wage and

overtime compensation.  Plaintiffs fail to provide any factual detail about the other

employees, such as names of fellow employees whom they observed or with whom and

when they had conversations about not receiving minimum wage or overtime

compensation. . . .  Plaintiffs have not provided a factual basis for the court to consider

whether the employees plaintiffs refer to are similarly situated to them.").

For these reasons, the collective will include waiters and cashiers, but not kitchen

staff or any other category of employees.

## II.   Notice Period

Plaintiffs request a six-year notice period for the collective.  (Mem. at 13–14).

The recent trend "is to 'approve three-year notice periods to avoid the confusion caused

by notifying plaintiffs who potentially have two disparate claims with different statutes

of limitations, along with the inefficiency of providing notice to plaintiffs whose claims

may well be time-barred.'"  *Gurrieri v. County of Nassau*, No. 16-CV-6983, 2019 WL

2233830, at *8 (E.D.N.Y. May 23, 2019) (quoting *Mongiove v. Nate's Corp.*, No. 15-CV-

1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016)); *see also McBeth v. Gabrielli*

*Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("[W]hile '[n]otice to all

former employees, going back six years, has been authorized where plaintiffs seek relief

under both the FLSA and the New York Labor Law,' the growing trend in this district

appears to be limiting the notice period to three years." (second alteration in original)

(citations omitted).  As numerous district courts have noted,

> "[i]t would be confusing to employees who are ineligible for the FLSA opt-in [collective] to receive the opt-in notice, which does not relate to any state law claims.  Further, while a class for the state law claims may someday be certified, it is an opt-out, not an opt-in, class, so there is no danger of claim lapse.

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (emphasis removed);

*see also Gurrieri*, 2019 WL 2233830, at *8 ("It would therefore be unnecessarily

confusing for employees who are ineligible for the FLSA opt-in [collective] to receive a

notice that pertains only to the FLSA claims. . . .  Further, although the Court may

eventually certify a class for the NYLL claims, that class would be opt-out, not opt-in, in

nature.  Thus, those class members would face no risk of claim lapse, even if they did not

receive notice of this case at this juncture.").  The Court agrees with this reasoning and

finds that here a six-year notice period is not appropriate.

As to whether a three-year or two-year notice should apply under FLSA, "at the

conditional certification stage, a plaintiff need not provide evidence sufficient to

establish willfulness in order for the three-year period to be utilized for notification

purposes[.]" *Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *4

(S.D.N.Y. July 2, 2013).  "If appropriate, this Court can revisit any statute of limitations

questions at a later stage." *Raimundi v. Astellas U.S. LLC*, No. 10-CV-5240, 2011 WL

5117030, at *2 (S.D.N.Y. Oct. 27, 2011).  As a result, at this stage, it is appropriate to

permit conditional certification for a three-year period—and during a subsequent stage

of the case, should Plaintiffs fail to demonstrate that Defendants acted willfully,

employee claims' can be limited.

The three-year period solely for notice purposes should commence from the date of the filing of the Complaint and not the date of this Court's order through the present. *See, e.g.*, *id.* (granting a notice period from three years prior to the filing of the complaint through the entry of the Court's order granting conditional certification).

III.  <u>Discovery of Names and Contact Information of Potential Collective Members</u>

Plaintiffs ask the Court to order Defendants to produce the names and contact information of potential collective members, including "names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, dates of employment, and . . . social security numbers[.]" (Mem. at 14–15).

Most of this information is unobjectionable. "Courts in this district routinely allow Plaintiffs to receive contact information of putative collective members, including last known addresses, telephone numbers, and emails." *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 96 (S.D.N.Y. 2020). Courts also allow for the production of dates of employment, *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332, 2021 WL 148751, at *10 (S.D.N.Y. Jan. 15, 2021), *aff'd*, 2021 WL 465359 (Feb. 9, 2021), and rates of pay, *Jeong Woo Kim*, 985 F. Supp. 2d at 452.

On the other hand, "[t]he request to compel production of social security numbers is within the Court's sound discretion," *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011), but it is not routine. "While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice." *Id.* Plaintiffs have not yet demonstrated that social security numbers are necessary to locate potential collective members. If Plaintiffs are not able to give direct notice to some potential

collective members, Plaintiff may then seek for production of social security numbers for those individuals only. *Rosario v. Valentine Ave. Disc. Store, Co*., 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."); *Desir v. NYU Langone Health Sys*., No. 19-CV-8144, 2020 WL 7631434, at *8 (S.D.N.Y. Oct. 19, 2020) (same), *report and recommendation adopted*, 2020 WL 7630623 (Dec. 22, 2020).

Therefore, Defendants shall produce names, titles, compensation rates, last known mailing addresses, email addresses, telephone numbers, and dates of employment for potential collective members but shall not produce social security numbers at this time. *E.g*., *Ruiz v. Truffa Pizzeria & Wine Room Corp*., No. 20-CV-8645, 2021 WL 568249, at *7 (S.D.N.Y. Feb. 15, 2021).[10]

IV.   Content and Distribution of Notice of Pendency

Plaintiffs ask the Court to approve their proposed notice, which includes a sixty-day opt-in period. (Mem. at 15–16; Proposed Notice). "Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Yi Mei Ke*, 2021 WL 148751, at *12 (alteration in original) (quoting *Lee v. ABC Carpet & Home*, No. 00-CV-984, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008)).

---

[10] The Court thus declines to so-order the proposed confidentiality order because Defendants will not be producing social security numbers. (*See* Confidentiality Order, attached as Ex. 3 to Greben Aff., Dkt. No. 21-4).

> To that end, the notice generally should contain[ ] "a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries."

*Id.* (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012)).  Courts in this district have also found that "collective action notice[s] must include a statement informing potential opt-in plaintiffs of any fee arrangement, to which the named plaintiffs and their counsel agreed and which may impact the opt-in plaintiffs' recovery."  *Li Ni v. Red Tiger Dumpling House Inc*, No. 19-CV-3269, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020).  A sixty-day opt-in period is "common" in this Circuit.  *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020).

Plaintiffs' proposed notice sufficiently details the nature of the lawsuit, notes the legal effects of joining the collective, explains that the Court has not opined on the merits of the lawsuit, outlines how to join, and the other generally required information. (*See* Proposed Notice).  Plaintiffs shall, however, modify the notice to (1) limit the collective to waiters and cashiers; (2) limit the notice period to three years; and (3) inform potential collective members of any fee arrangement.

As Plaintiffs request, (*see* Mem. at 7), the amended notice may be sent to potential plaintiffs prior to the close of discovery.  Plaintiffs also argue that notice should be sent via mail, e-mail, and text message.  (*Id.* at 16–17; *see also* Proposed Email, attached as Ex. 6 to Greben Aff, Dkt. No. 21-4; Proposed Text Message, attached as Ex. 7 to Greben Aff, Dkt. No. 21-4).  Such dissemination via mail, e-mail, and text

message is appropriate.  *Qiang Lu*, 447 F. Supp. 3d at 97; *Yi Mei Ke*, 2021 WL 148751, at

*14.  Plaintiffs may also send a reminder notice via mail, e-mail, and text message

halfway through the opt-in period.  (Mem. at 18–19); *Qiang Lu*, 447 F. Supp. 3d at 98;

*Yi Mei Ke*, 2021 WL 148751, at *15.

> Plaintiffs request that the Court require Defendants to post notice and the

accompanying consent forms at their three business locations.  (Mem. at 17–18).  The

Court finds that this, too, is appropriate.  *Whitehorn*, 767 F. Supp. 2d at 452 ("For the

duration of the 60-day period, Defendants shall post a copy of the notice in each of

Defendants' three restaurants, in a conspicuous place where putative plaintiffs are likely

to see it."); *Yi Mei Ke*, 2021 WL 148751, at *14 (same).

V.    Equitable Tolling

> Finally, Plaintiffs argue that the FLSA statute of limitations should be tolled until

the opt-in can be sent to potential plaintiffs.  (Mem. at 19).  "Ordinarily, the statute of

limitations in an FLSA collective action 'continues to run with respect to each potential

plaintiff's collective action claim until that plaintiff files the written consent form opting

into the suit.'" *Yi Mei Ke*, 2021 WL 148751, at *15 (quoting *Whitehorn*, 767 F. Supp. 2d

at 449).  "In such a case, equitable tolling may be warranted to avoid 'inequitable

circumstances' where [']plaintiffs have acted with reasonable diligence in pursuing their

claims,' but where 'a substantial number of class members may now be time-barred

through no fault of counsel or the class representative.'" *Id.* (quoting *Jackson v.

Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)).  "Equitable tolling is appropriate

'only in rare and exceptional circumstances . . . where a plaintiff has been prevented in

some extraordinary way from exercising his rights." *Qiang Lu*, 447 F. Supp. 3d at 98

(alteration in original) (quoting *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL

2658172, at *16 (S.D.N.Y. May 5, 2016)).  Plaintiffs' arguments "do not conform to the equitable tolling doctrine as described by the Supreme Court and the Second Circuit" because Plaintiffs' generic request does not establish any of the necessary factors for tolling and relies solely on a vague allegation of "delay," which is insufficient.  *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 659 (S.D.N.Y. 2017).  Plaintiffs also do not demonstrate that any putative members' claims will be time barred to substantiate their request for equitable tolling.  As such, the Court denies this request.  *See, e.g.*, *id.*; *Yi Mei Ke*, 2021 WL 148751, at *15.

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion to conditionally certify a collective FLSA action should be granted in part and denied in part.  The collective only extends to waiters and cashiers who worked for Defendants and the collective is limited to a three-year period.  In addition, the other requests regarding the notice form, distribution, and other matters are resolved as detailed above.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this Report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

SO ORDERED.


/s/*Sanket J. Bulsara* June 1, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York