UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HYUNWOO HWANGBO, JAE YOUNG CHEON,       :
and JAEHOON CHO, *on behalf of themselves and*    :
*others similarly situated*,                                     :
                                          Plaintiffs,     :
                                                                       :
                                                                       :
                    -against-                                    :
                                                                       :
KIMGANAE, INC., d/b/a KIMGANAE; JOON HO :
KIM; HYANG KYUM KIM; and KI DONG KIM,   :
                                                                       :
                                          Defendants.     :
------------------------------------------------------------------x

**OPINION AND ORDER**
19-cv-6356(DLI)(SJB)

**DORA L. IRIZARRY, United States District Judge:**

On November 8, 2019, Hyunwoo Hwangbo ("Hwangbo"), Jae Young Cheon ("Cheon"), and Jaehoon Cho ("Cho") (collectively, "Plaintiffs") initiated this putative collective action on behalf of themselves and others similarly situated, against Kimganae, Inc., d/b/a Kimganae ("Kimganae"), Joon Ho Kim ("Joon"), Hyang Kyum Kim ("Hyang"), and John Doe, the husband of Hyang ("Individual Defendants") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act of 1938, 19 U.S.C. § 201 *et seq.* ("FLSA"), New York Labor Law, § 650 *et seq.* ("NYLL"), and 12 New York Codes, Rules and Regulations § 146 ("NYCRR"). *See*, Compl, Dkt. Entry No. 1. Defendants answered the complaint on February 21, 2020. *See*, Ans., Dkt. Entry No. 12.

On April 14, 2020, Plaintiffs moved to amend the complaint to substitute the name "John Doe" with "Ki Dong Kim" after defense counsel informed Plaintiffs that John Doe's real name is Ki Dong Kim. *See*, Mot. to Am. Compl., Dkt. Entry No. 15 at 1. Originally, the complaint identified Ki Dong Kim as "John Doe" because Plaintiffs did not know the name of Hyang's husband at the time of filing. *See*, Compl, at ¶ 33. On April 15, 2020, the Honorable Sanket J. Bulsara, United States Magistrate Judge of this Court, granted the motion. *See*, Electronic Order

dated April 15, 2020.  On April 16, 2020, Plaintiffs filed their amended complaint only to reflect this change.  *See*, Am. Compl., Dkt. Entry No. 16. To date, Defendants have not answered the amended complaint.  The Court finds this of no consequence given Plaintiffs' representation that Defendants did not object to the technical amendment and that it did not alter the claims alleged in the original complaint.

On June 1, 2021, the magistrate judge issued a Report and Recommendation ("R&R") recommending conditional certification of the collective class as to waiters and cashiers who worked at Kimganae during the three-year period preceding this action.  *See*, R&R, Dkt. Entry No. 26 at 20.  The parties did not object to the R&R, and the Court adopted the R&R in its entirety on July 7, 2021.  *See*, Electronic Order dated July 7, 2021.  Between September 29, 2021 and October 26, 2021, Jong Min Kim, Manwoo Lee, Jaemin Kim, and Joon Sung Na (collectively, "Opt-In Plaintiffs") consented to join this action.   *See*, Consents to Join, Dkt. Entry Nos. 30-33, respectively.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs move for partial summary judgment finding Defendants: (1) Kimganae, Hyang, and Joon qualify as employers under the FLSA and NYLL; (2) liable under Counts One and Three for a failure to pay them minimum wage in accordance with the FLSA and NYLL; (3) liable and damages under Count Six for a failure to provide proper wages notices; (4) liable and damages under Count Seven for a failure to provide proper wage statements; (5) liable as to Counts Five, Nine, and Ten for unlawful deductions from wages and gratuities; (6) liable for liquidated damage; and (7) liable as to Opt-In Plaintiffs' minimum wage, wage notice, and wage statement claims under Counts One and Three, Six, and Seven, respectively.  *See*, Pls.' Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Pls.' Mem."), Dkt. Entry No. 42-1.  Defendants opposed the motion.  *See*, Defs.' Mem. of Law in Opp'n to Pls.'

Mot. ("Defs.' Opp."), Dkt. Entry No. 46.  Plaintiffs replied.  *See*, Pls.' Reply Mem. of Law ("Pls.' Reply."), Dkt. Entry No. 49.  For the reasons set forth below, Plaintiffs' motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

### I.     Local Civil Rule 56.1 – Facts and Evidence Considered

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires that a party moving for summary judgment submit "a separate, short and concise statement, in numbered paragraphs" setting forth material facts as to which there is no genuine issue to be tried.  *See*, Local Civ. R. 56.1(a). Similarly, a party opposing a motion for summary judgment shall submit "a corresponding numbered paragraph responding to each numbered paragraph in the statement of the moving party[.]"  *See*, Local Civ. R. 56.1(b).  The facts set forth in the moving party's Rule 56.1 Statement will be deemed admitted "unless specifically controverted by a correspondingly numbered paragraph" in the opposing party's Rule 56.1 Statement.  *See*, Local Civ. R. 56.1(c); *see also*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001).

Here, Plaintiffs' Local Civil Rule 56.1 Statement consists of seventy-seven paragraphs that cite to admissible evidence.  *See*, Plaintiffs' Rule 56.1 Statement ("Pls.' 56.1"), Dkt. Entry No. 42-2.  Defendants' Local Civil Rule 56.1 Counterstatement ("Defendants' Rule 56.1") consists of a mere eighteen paragraphs, nearly all of which fail to correspond with Plaintiffs' Rule 56.1 Statement.  *See*, Defendants' Rule 56.1 Statement ("Defs.' 56.1"), Dkt. Entry No. 46-1. Defendants' Rule 56.1 also is deficient because: (1) multiple paragraphs fail to cite admissible evidence; (2) Defendants mischaracterize the cited materials; and (3) it contains legal arguments or cites materials that do not support Defendants' factual assertions.  Notably, none of the facts set

forth in Plaintiffs' Rule 56.1 Statement are controverted by a correspondingly numbered paragraph. Accordingly, the facts set forth in Plaintiffs' Rule 56.1 Statement are deemed admitted. *See*, Local Rule 56.1(c); *See also, Estate of Keenan v. Hoffman-Rosenfeld*, 2019 WL 3416374, at *12 (E.D.N.Y. July 29, 2019), *aff'd*, 833 F. App'x 489 (2d Cir. 2020).

However, Plaintiffs are not absolved of their burden to show that they are entitled to judgment as a matter of law since their Local Rule 56.1 statement is not a "vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz*, 258 F.3d at 74; *See also*, *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). As it must, the Court has considered only facts that have been established by admissible evidence and disregarded conclusory allegations and legal arguments contained in the Rule 56.1 Statements. *See*, *Holtz*, 258 F.3d at 73. The Court also has exercised its discretion to "conduct an assiduous review of the record" in order "to consider what the parties fail to point out in their Local Rule 56.1 Statements." *Id*. (internal quotation marks and citation omitted).

## II.    Factual Background

Kimganae is a Korean restaurant located at 39-12 Union Street, Flushing, New York with an annual gross volume of sales exceeding $500,000. Compl. at ¶¶ 11, 13; Ans. at ¶¶ 11, 13.[1] The restaurant is owned and operated by Hyang while her son Joon serves as its bookkeeper. *Id*. at ¶ 33; Pls.' 56.1 at ¶ 30; Hyang Kyum Kim Deposition– Day 1 ("Hyang Dep."), Dkt. Entry No. 42-10, at 17. Both serve as principals and managers at Kimganae and actively are involved in managing and controlling its day-to-day operations, including supervising and managing waiters from at least September 1, 2013 until June 3, 2020. Compl. at ¶¶ 12, 17; Ans. at ¶¶ 12, 17; Pls.'

---

[1] The Court relies on Defendants' answers to the complaint because "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant[s] throughout this litigation." *Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).

56.1 at ¶ 29.  They also exercise control over Kimganae's employment records.  Compl. at ¶ 18; Ans. at ¶ 18; Pls.' 56.1 at ¶ 31.

Hyang has lived in South Korea since approximately 2010 but has visited the United States on several occasions.  *See*, Hyang Dep. at 21-22, 31.  While in the United States, Hyang "did everything" at Kimganae.  *Id*. at 29.  Despite living in South Korea, Hyang watches Kimganae's video surveillance cameras and provides instructions to the employees.  *Id*. at 44-45.  Additionally, Hyang approves employees' weekly pay after it first is calculated by a manager and Joon.  Pls.' 56.1 at ¶¶ 45, 50.

Joon started at Kimganae in 2012 or 2013, after Hyang moved back to South Korea.  *See*, Joon Ho Kim Deposition ("Joon Dep."), Dkt Entry No. 42-9 at 17; Hyang Dep. at 30-31.  He receives instructions from Hyang and conveys them to employees.  Defs.' 56.1 at ¶ 11.  Joon is a principal and manager exercising control over Kimganae's day-to-day operations.  Compl. at ¶¶ 12, 17; Ans. at ¶¶ 12, 17. Joon hires new employees, prepares and provides the paperwork for new hires, and maintains Kimganae's employment records.  Pls.' 56.1 at ¶¶ 8, 35, 36.  He manages Kimganae's money, pays the employees' weekly wages in cash, and ensures that employees sign their wage statements.  *Id*. at ¶¶ 24, 34, 46, 52.  When employees have questions about different work situations, they have sought permission or guidance from Joon.  *Id*. at ¶¶ 53, 54.  Additionally, while waiters schedule their own hours, Joon supervises their working hours.  *Id*. at ¶¶ 51, 67; Defs.' Response to Pls.' Interrogatories ("Defs.' Interrog. Resp."), Dkt. Entry No. 45-1, at 5.

Plaintiffs were employed as waiters at Kimganae between 2012 and 2019.  Defs.' 56.1 at ¶ 5.  Specifically, Cheon was employed from December 13, 2012 until August 7, 2019, Cho from approximately April 2017 until August 25, 2019, and Hwangbo from approximately September

15, 2013 until August 14, 2019.[2]  Pls.' 56.1 at ¶¶ 5-7.  When Plaintiffs were hired, and at several points during their employment, they each received wage notices.  *Id*. at ¶ 9; Wage Notices, Dkt. Entry No. 46-2.  Defendants maintain that the hourly rates of pay listed on Plaintiffs' wage notices were the minimum wage, less the applicable tip credit.  Pls.' 56.1 at ¶¶ 16, 20.  Defendants also maintain that posters regarding the minimum wage and tip credit were posted in Kimganae's changing room, and that Plaintiffs received customer tips that were controlled exclusively by Kimganae employees.  Defs.' 56.1 at ¶¶ 7-8.

Plaintiffs' wage notices do not specify that Defendants would take an allowance for tips against Plaintiffs' wages, the amount to be taken, nor that Plaintiffs would receive extra pay when their base rate of pay and tips were less than the applicable hourly minimum wage.  Pls.' 56.1 at ¶¶ 13-14, 17.  However, Plaintiffs' wage notices provide that Defendants would take an allowance against Plaintiffs' wages for each meal provided to them, ranging from $2.50 to $5.50 per meal.  *Id*. at ¶ 19.  During Plaintiffs' employment, each Plaintiff signed an agreement acknowledging that although the law specifies the amount a restaurant may charge an employee per meal, Kimganae charges more than this amount.  *Id*. at ¶¶ 21-22; *See also*, Joon Dep. at 123-127, 129.

Plaintiffs also received wage statements while employed at Kimganae, none of which note that a tip allowance would be deducted from Plaintiffs' wages.  *See*, Wage Statements, Dkt. Entry Nos. 48-1 through 48-8; Pls.' 56.1 at ¶ 27.  However, the wage statements do note that Defendants deducted $2.50, $5.00, $5.50, or $6.50 from Plaintiffs' wages for each meal that they were furnished at Kimganae.  *See*, Wage Statements.  Plaintiffs' wage statements also reflect wages

---

[2]  Apparently, there is a typographical error in Plaintiffs' Rule 56.1 statement, which states that Hwangbo's employment started around September 15, 2016.  The cited affidavit states the starting year was 2013, and Hwangbo's wage notices and wage statements date back to 2013.

owed, hours worked, and deductions made.  Defs. 56.1 at ¶ 15.  However, Plaintiffs maintain that these were signed under duress.  Pls.' 56.1 at ¶ 28.

When Plaintiffs made mistakes, Defendants required Plaintiffs to buy Starbucks coffee for Kimganae employees and Joon or pay a fine instead of being terminated.  Defs.' 56.1 at ¶ 17; Pls.' 56.1 at ¶ 62. For example, Plaintiffs were required to purchase $50 worth of Starbucks coffee when they were late.  *See*, Hwangbo Affidavit, Dkt. Entry No. 42-3 at ¶ 11; Cho Affidavit, Dkt. Entry No. 42-4 at ¶ 11; Cheon Affidavit, Dkt. Entry No. 42-5 at ¶ 11.  In addition, Joon fined Hwangbo $200 for accidently locking someone inside Kimganae.  Pls.' 56.1 at ¶ 65.  Joon and Hyang also reduced Plaintiffs' tips when they believed that cash shortages were the result of Plaintiffs' mistakes.  *Id*. at ¶¶ 62-63; Defs.' 56.1 at ¶ 18.

## LEGAL STANDARD AND ANALYSIS

### I.    Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  "A genuine factual dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Truitt v. Salisbury Bank & Tr. Co*., 52 F.4th 80, 85 (2d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party meets its initial burden of demonstrating the absence of genuine issues of material fact, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Instead, the nonmoving party affirmatively must set out facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 250. "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.   Applicability of the FLSA and NYLL

To establish a claim under the FLSA: (1) Defendants must be employers as defined by the FLSA; (2) Plaintiffs are employees as defined by the FLSA; and (3) the employment relationship is not exempt from the FLSA. *Payamps v. M & M Convenience Deli & Grocery Corp.*, 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018). The NYLL is applicable when Plaintiffs are employees and Defendants are employers, as defined by the statute and accompanying regulations. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp.3d 339, 360 (E.D.N.Y. 2015) (citing NYLL § 650 *et seq.*; NYCRR § 142–2.2).

Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "The NYLL defines 'employer' as 'any person ... employing any individual in any occupation, industry, trade, business or service' or 'any individual ... acting as employer.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) (quoting NYLL §§ 190(3), 651(6)). Courts in this Circuit interpret the definition of 'employer' under the NYLL coextensively with the definition used by the FLSA. *See, Sethi v.*

*Narod*, 974 F. Supp.2d 162, 188 (E.D.N.Y. 2013) (collecting cases). The Second Circuit has held that the remedial nature of the FLSA warrants an expansive interpretation of its provisions. *See, e.g., Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 113 (2d Cir. 2015). Thus, the term "employer" is liberally construed to apply broadly and determined on a case-by-case basis. *Greenawalt v. AT & T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016).

To determine whether an individual or entity qualifies as an employer, courts examine the "economic reality" of their relationship with employees. *Irizarry*, 722 F.3d at 104 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999))(explaining that this test applies equally to managers and owners). However, an individual employer must possess "some degree of individual involvement in the company that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Id*. at 109. This includes delegated authority. *Id*. at 110.

The Second Circuit has set forth different sets of factors for courts to consider in determining the type of employment relationship that exists in a particular case, *i.e*., formal control, independent contractors versus employees, and functional control of subcontracted workers. *Greenawalt*, 642 F. App'x at 37 (citations omitted). As relevant here, the purported employment relationship falls under the purview of formal control. To determine whether a putative employer exercises formal control over workers, the Court considers a non-exhaustive list of factors determine whether an employer-employee relationship exists, including the putative employer's ability to: (1) hire and fire employees; (2) supervise and control employee work schedules or conditions of employment; (3) determine the rate and method of compensation; and (4) maintain employee records. *Carter v. Dutchess Community College*, 735 F.2d 8, 37 (2d Cir.1984), *holding*

*modified by*, *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71, 78-79 (2d Cir. 2003)(the *Carter* factors are not the "exclusive touchstone of the joint employer inquiry under the FLSA" and courts should consider the circumstances as a whole). Notably, "[b]ecause *Carter* defines employment more narrowly than [the] FLSA requires, satisfying [every factor of] this test is sufficient, but not necessary, to show joint employment." *Greenawalt*, 642 F. App'x at 37.

Additionally, employers are jointly and severally liable for violations of the FLSA and NYLL. *Sevilla v. House of Salads One LLC*, 2022 WL 954740, at *4 (E.D.N.Y. Mar. 30, 2022). When an employer-entity achieves an annual gross business volume of $500,000 or more, all employees are covered under the FLSA when they handle, sell, or otherwise work on goods or materials moved in or produced for commerce. *Jones v. E. Brooklyn Security Services Corp.*, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012).

Defendants concede that Plaintiffs were employed by Kimganae as waiters between 2012 and 2019. Defs.' 56.1 at ¶ 5. Kimganae also has gross annual sales in excess of $500,000, and it is inconceivable that waiters, like Plaintiffs, working at restaurant with sales exceeding $500,000 would not handle, sell, or otherwise work with items moved in or produced for commerce. *See*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp.3d 19, 32-33 (E.D.N.Y. 2015). While Defendants concede that Plaintiffs were employed by Kimganae, they fail to address Plaintiffs' contention that Hyang also was Plaintiffs' employer. Instead, Defendants contend that Joon was not Plaintiffs' employer under either the FLSA or NYLL. *See*, Defs.' Opp. at 14-16. A non-moving party's failure to address certain aspects of a moving party's summary judgment motion still requires the Court to determine whether summary judgment is appropriate. *See, Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

### A.      Hyang Kyum Kim

It is undisputed that Hyang satisfied every aspect of the *Carter* factors and is Plaintiffs' employer. Hyang owns, operates, and exercises control over the day-to-day operations of Kimganae where Plaintiffs worked as waiters between 2012 and 2019.   She supervised Kimganae's employees and passed along instructions for employees that Joon executed on her behalf.   Notably, Plaintiffs received wage statements from Kimganae that list Hyang as their employer.   *See*, Wage Statements.   Hyang also approved the amounts of compensation that Plaintiffs were paid and, along with Joon, required Plaintiffs to buy Starbucks coffee or pay a fine instead of being terminated when they made mistakes.   Finally, she exercised control over Kimganae's employment records.

### B.      Joon Ho Kim

While Defendants contend that Joon is not Plaintiffs' employer, the undisputed, admissible evidence satisfies all the *Carter* factors establishing Joon was Plaintiffs' employer. First, Defendants admitted that Joon is a principal and manager at Kimganae where he exercises control over Kimganae's day-to-day operations.  Compl. at ¶¶ 12, 17; Ans. at ¶¶ 12, 17.  Joon admitted during his deposition that he hired workers and provided them with employment documents upon hiring.  Joon Dep. at 7, 172-173.  He also played a significant role in firing, penalizing, and fining employees when they committed misconduct, including warning employees about perceived misconduct and threatening to take money from employee tips.   *Id*. at 149-157, 160-163. Threatening or imposing fines is strong evidence of control over conditions of employment.  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp.2d 901, 917-18 (S.D.N.Y. 2013) (citing *Irizarry*, 722 F.3d at 110).

Moreover, Joon supervised employees as they recorded their working hours. Pls.' 56.1 at ¶¶ 51, 67; Defs.' Interrog. Resp. at 5. He dictated to employees the length of breaks that employees were permitted to take. *See*, Joon Dep. at 137-140. Employees also sought his permission or guidance, including interrupting Joon's deposition by calling to ask for instructions concerning the shoveling of snow. Pls.' 56.1 at ¶¶ 53, 54. It is obvious why employees sometimes refer to him as "the boss." Joon Dep. at 147-148.

Notably, Joon was part of a three-tiered system for determining employee compensation. Pls.' 56.1 at ¶¶ 45, 50. He admitted to spending most of his time during a typical eight-hour day calculating employee wages. Joon Dep. at 57. He also is responsible for handling Kimganae's money, paying the employees in cash, and maintaining employee records. Pls.' 56.1 at ¶¶ 24, 34, 36. Finally, Joon's telephone number was listed as Kimganae's telephone number on documents provided to employees. Pls.' 56.1 at ¶ 10.

The economic realities of this case fall squarely within the factors constituting a joint employment relationship pursuant to *Carter* and *Irizarry*. *See*, *Irizarry*, 722 F.3d at 104, 110. While Defendants attempt to diminish the role that Joon undertook as a "bookkeeper," they fail to establish a triable, genuine issue of material fact. *See*, Defs.' Opp. at 14-16. Accordingly, Joon is an employer under the FLSA and NYLL and is jointly and severally liable to Plaintiffs alongside Kimganae and Hyang.

## III. Minimum Wage Claims

The FLSA and NYLL guarantee compensation for all work engaged in by a covered employee. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp.3d 442, 472 (S.D.N.Y. 2015)(citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011)). Specifically, each statute establishes a minimum wage that employers must pay their employees. *See*, 29 U.S.C. § 206; NYLL § 652(1). Although the FLSA and NYLL prescribe differing minimum wages, the federal minimum wage

does not preempt a state or local minimum wage. *See*, 29 U.S.C. § 218(a). Moreover, when an employee brings minimum wage claims under both statutes, the highest wage prevails in determining minimum wage violations.[3] *See*, 29 C.F.R. § 778.5.

To establish liability on a claim for the underpayment of wages, an employee must prove that he performed work for which he was not compensated properly and that the employer had actual or constructive knowledge of that work. *Kuebel*, 643 F.3d at 361. Generally, the burden placed upon an employee is dependent upon the records kept and maintained by the employer. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 497 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). The parties here dispute the accuracy of Defendants' records. Defendants contend that Plaintiffs' wage statement accurately reflect the hours worked and wages paid while Plaintiffs maintain that they were paid far less since their wage statements were signed under duress. *See*, Defs.' Opp. at 10-11; *See also*, Pls. Mem. at 3; Pls.' 56.1 at ¶ 28. However, this dispute does not create a genuine issue of material fact because it is undisputed that Defendants did not provide proper wage notices concerning the withholding of tips as discussed in more detail below. *See*, *Truitt*, 52 F.4th at 85.

Under certain conditions, the FLSA and NYLL permit an employer to pay a tipped employee a cash wage less than the standard minimum wage by allowing the employer to credit a portion of an employee's tips towards the employer's minimum wage obligation.[4] *See*, 29 U.S.C.

---

[3] Federal minimum wage has remained at $7.25 an hour since 2009. *See*, 29 U.S.C. § 206(a)(1)(C). New York State minimum wage was $7.15 an hour between January 1, 2007 and December 30, 2013. NYLL § 652(1). From December 31, 2013 through December 30, 2016, New York State minimum wage increased annually. *Id*. Between December 31, 2016 and December 31, 2019, the minimum wage increased annually in New York City based upon the number of persons employed. *Id*. § 652(1)(a)(i)-(ii).

[4] From January 1, 2011 until December 30, 2013, a food service employer could claim a credit of $2.25 an hour against its minimum wage obligation. 12 NYCRR § 146-1.3 (effective January 1, 2011). Beginning on December 31, 2013, the applicable amount a food service employer could credit itself increased in tandem with increases to the minimum wage. *Compare, Id.* (amend. effective December 31, 2013, December 31, 2016) *with* NYLL § 652(1).

§ 203(m), (t); NYLL § 652(4); 12 NYCRR § 146–2.2.  This allowance against the employer's minimum wage obligation is commonly referred to as a "tip credit."  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp.3d 490, 497 (S.D.N.Y. 2015).

Here, Defendants contend that Plaintiffs were paid minimum wage, less the applicable tip credit.  *See*, Defs.' Opp. at 3; Pls.' 56.1 at ¶ 20.  While Plaintiffs maintain that they were paid far less than the minimum wage, they contend that Defendants were unable to take a tip credit due to inadequate notice.  *See*, Pls.' Mem. at 3-9.  The notice provisions of the FLSA and NYLL are construed strictly.  *See, Chang v. Loui Amsterdam, Inc*, 2022 WL 4586100, at *8 (E.D.N.Y. Sept. 29, 2022).  "[T]he employer has the ultimate burden to prove compliance with the [tip] credit notice requirement" and "must adduce definite competent evidence showing that waiters were informed of the tip credit" when opposing summary judgment.  *Orellana v. One If By Land Rest. LLC*, 2020 WL 5768433, at *11 (S.D.N.Y. Sept. 27, 2020) (citing *Inclan*, 95 F. Supp.3d at 498).  If Defendants cannot demonstrate compliance with the tip credit notice requirements, Plaintiffs will satisfy their burden of proving liability as to their minimum wage claims.  *Id*.  For the reasons set forth below, Defendants fail to demonstrate compliance with the FLSA's and NYLL's notice requirement or create a genuine issue of triable fact.

### A.   NYLL – Tip Credit

To claim a tip credit, the NYLL requires that, "[p]rior to the start of employment, an employer shall give each employee written notice of ... the amount of tip credit, if any, to be taken from the basic minimum hourly rate ... [t]he notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate."  *Gamero*, 272 F. Supp.3d at 502 (quoting 12 NYCRR § 146–2.2(a)).  The notice also must be written in both English and "any other language spoken by the new employee as his/her primary language."  *Id*. (quoting § 146–2.2(a)(1)-(2)).  Once an employer has provided written notice of this tip credit, the employer

must obtain "acknowledgement of receipt signed by the employee," and that signed acknowledgement must "be kept on file for six years." *Id.* (citing § 146–2.2(c)). Finally, the notice "shall also be required prior to any change in the employee's hourly rates of pay." 12 NYCRR § 146–2.2(b).

Defendants contend that they satisfied this obligation through Plaintiffs' wage notices. *See*, Defs.' Opp. at 6-7. However, these notices fail to comply with the strict notice requirements under NYLL because Plaintiffs' initial and subsequent notices fail to identify the amount of tip credit to be taken or the extra pay that would be required if tips were insufficient to bring the employee up to the basic minimum hourly rate. *See*, Wage Notices. Indeed, the tip credit allowance category is completely blank. *Id.* Defendants also failed to give any notice for multiple years as required under 12 NYCRR § 146–2.2(b). *Id.*

Additionally, Defendants' contention that Plaintiffs could have inferred the amount of tip credit by: (1) examining the wage-and-hour law posters in Kimganae's changing room; and (2) calculating the difference between the minimum wage listed on the posters and the wages listed on their wage notices, is meritless. *See*, Defs.' Opp. at 7. Posted notices setting forth the applicable wage-and-hour laws are insufficient to satisfy the written, individualized notice requirements under the NYLL. *See*, *Alves v. Affiliated Care of Putnam, Inc.*, 2022 WL 1002817, at *14 (S.D.N.Y. Mar. 30, 2022). To hold otherwise, and allow a tip credit notice to be inferred, would subvert the strict dictates of the NYLL's notice requirement. *See*, *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016).

Consequently, Defendants were not entitled to a tip credit under the NYLL, and are liable for the difference between the wages they actually paid Plaintiffs and the applicable minimum wage. *See, Gomez v. MLB Enterprises, Corp.*, 2018 WL 3019102, at *6 (S.D.N.Y. June 5, 2018).

Accordingly, Plaintiff's motion for summary judgment as to their NYLL minimum wage claim is granted.[5]

### B.    FLSA – Tip Credit

An employer may claim a tip credit under the FLSA when the tipped employee has been informed by the employer of the provisions of 29 U.S.C. § 203(m) and all tips received by such employee have been retained by that employee, notwithstanding tip pooling between employees who customarily and regularly receive tips.  *See*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (citing 29 U.S.C. § 203(m)).  These two prerequisites must be satisfied even if the employee received tips at least equivalent to the minimum wage.  *Cabrera v. Canela*, 412 F. Supp.3d 167, 182 (E.D.N.Y. 2019).

A key distinction between the FLSA and NYLL is that the FLSA does not require the employer to provide an employee with written notice.  *See*, 29 U.S.C. § 203(m).  However, notice under the FLSA must include: (1) "'the amount of cash wage the employer is paying a tipped employee'";  (2) "'the additional amount claimed by the employer as a tip credit'"; (3) "a statement 'that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee'";  (4) "a statement 'that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement'"; and (5) "a statement 'that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.'"  *Chichinadze v. BG Bar Inc.*, 517 F. Supp.3d 240, 254 (S.D.N.Y. 2021) (quoting Wage and Hour Division, U.S. Dep't of Labor, Fact Sheet #15: Tipped Employees Under the FLSA); *See also*, *Jindan Wu v. Nat. Tofu Rest. Corp.*, 2018 WL 1009274, at *5 (E.D.N.Y. Feb. 20, 2018) (citing the same).  Here, Defendants maintain that Plaintiffs were

---

[5] The NYLL's limitations period for minimum wage claims is six-years.  NYLL § 663(3).  Accordingly, liability began on November 8, 2013.

provided adequate tip notice through verbal and written notice.  *See*, Defs.' Opp. at 4-7. Alternatively, Defendants assert that there is a genuine issue of material fact.  *Id*. at 7-8.  Neither of these contentions are availing.

As an initial matter, Defendants contend that: (1) they provided Plaintiffs with wage notices when the minimum wage increased; and (2) the wage-and-hour posters were updated as the minimum wage increased.  *See*, Defs.' Opp. at 4-5.  However, Defendants fail to cite admissible evidence to support these contentions and unsworn attorney arguments contained in a memorandum of law are not admissible evidence.  *See, Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (citing *INS v. Phinpathya*, 464 U.S. 183, 188–89 n.6 (1984)).  Notably, there are several years' worth of wage notices missing despite NYLL requiring Defendants to retain a copy of every wage notice provided to an employee for six years.  *See*, NYLL § 195(1)(a); *See also*, Wage Notices.

While Joon testified that employees were informed that money would be taken out of their wages for tips, he did not testify that Plaintiffs were informed of any other aspect of the FLSA's notice requirement, let alone that they understood why tips affected their wages.[6]  *See*, Joon Dep. at 173-174; 202-203.  Notice under the FLSA is insufficient when an employer informed employees that part of their compensation includes tips, instead of informing them that tips will be used to satisfy the employer's minimum wage obligations.  *He v. Home on 8th Corp.*, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014).  Notably, "[c]ourts in this Circuit hold that witness testimony regarding the notice provided to employees is insufficient to create a triable issue of fact with respect to tip credit eligibility when the testimony fails to establish that each plaintiff was

---

[6] In fact, Joon does not understand how a tip credit operates himself.  When asked about how a tip credit functions, Joon answered that a tip credit establishes a different minimum wage, as opposed to a credit towards the employer's minimum wage obligation.  *See*, Joon Dep. at 75, 77-78.

provided with all the information enumerated in the statute" and that employees understood it. *Chang*, 2022 WL 4586100, at *8 (collecting cases).

Defendants also contend that the use of posted materials satisfies the FLSA's notice requirement. *See*, Defs.' Opp. at 4-7.  A posted tip credit notice will satisfy the notice requirement only if the content of the posted materials is otherwise sufficient and promptly displayed. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 288 (S.D.N.Y. 2011)).  Here, Defendants have provided an undated photo of materials posted in Kimganae's changing room, the contents of which are largely unclear.  *See*, Picture of Changing Room Wall, Dkt, Entry No. 46-3.  The unclear nature of this photo does not satisfy any aspect of FLSA's notice requirements since the Court cannot assess its contents.  *Cf, Garcia v. Saigon Mkt. LLC*, 2019 WL 4640260, at *9 (S.D.N.Y. Sept. 24, 2019).

Significantly, Hyang testified that Defendants no longer have any copies of the materials posted to Kimganae's changing room wall.  *See*, Hyang Dep. at 59-60.  This is significant because the instant lawsuit was initiated less than three months after Plaintiffs left Kimganae in August 2019 and employers being sued for violating federal and state minimum wage laws have a strong incentive to retain all documents, including posted materials, to demonstrate compliance with federal and state law.  *See*, *He,* 2014 WL 3974670, at *5.

Joon testified that the posters on the changing room wall contained "all of their [employee] rights, and like how much for this and how much for this, and the tip credit and things like that." Joon Dep. at 76-77.  However, this minimal amount of information is insufficient to satisfy Defendants' burden as to each notice requirement or create a triable issue of fact.  *See, Chichinadze,* 517 F. Supp.3d at 246, 256; *See also*, *Copantitla.*, 788 F. Supp.2d 253, 288-90

(S.D.N.Y. 2011) (granting summary judgment when a witness testified that the posted material discussed the minimum wage and was posted across from the locker room).

Apparently, Defendants recognize these deficiencies as they provide two generic Department of Labor ("DOL") posters, one of which seems to have been posted on the changing room wall.  *See*, DOL Posters, Dkt. Entry Nos. 46-4, 46-5.  However, the posters contain none of the information that Defendants were required to provide to Plaintiffs pursuant to the FLSA's tip credit provision.  *Id*.  Moreover, generic DOL posters containing information about the FLSA and notification to employees that they would earn certain wages, plus tips, fail to satisfy an employer's burden under the FLSA.  *See*, *Chichinadze*, 517 F. Supp.3d at 256; *See also*, *Hernandez*, 2016 WL 3248493, at *24.

Even if these posters and the remaining materials posted on Kimganae's changing room wall provided the requisite information, nearly all appear to be in English, not Korean, Plaintiffs' primary language.  *See*, Picture of Changing Room Wall; *See also*, Wage Notices.  Posted notices are deficient when they are not in the employee's primary language.  *See, Hernandez,* 2016 WL 3248493, at *24; *See also, Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *8, *19 (S.D.N.Y. Feb. 1, 2007).

Based on the foregoing, Defendants have failed to satisfy each of FLSA's notice requirements or set forth sufficient evidence to create a genuine triable issue of material fact.  Accordingly, Plaintiffs' motion for summary judgment as to their FLSA minimum wage claim is granted.[7]

---

[7] The FLSA's limitations period for minimum wage claims is two years, unless the employer's violation is willful, in which the applicable period is three years. *Inclan, Inc.*, 95 F. Supp.3d at 503.  At the earliest, liability began on November 8, 2016.  However, Plaintiff has not moved for a finding as to willfulness nor is the Court making such a determination at this time.

IV.     **Wage Notices and Wage Statements**

A.     **Wage Notices**

Effective April 9, 2011, the New York Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL, required an employer to provide to each employee:

> [A]t the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; *allowances, if any, claimed as part of the minimum wage, including tip*, meal, or lodging allowances; the regular pay day designated by the employer ...; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.... For all employees who are not exempt from overtime compensation ..., the notice must state the regular hourly rate and overtime rate of pay[.]

NYLL § 195(1)(a) (effective Apr. 9, 2011) (emphasis added); *See, also*, *Demirovic v. Ortega*, 2018 WL 1935981, at *6 (E.D.N.Y. Apr. 24, 2018), *aff'd*, 771 F. App'x 111 (2d Cir. 2019).  The notice was required to be given "within ten business days of the start of employment."  *Kone v. Joy Construction Corp.*, 2016 WL 866349, at *5 (S.D.N.Y. March 3, 2016).  "Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." NYLL § 195(1)(a). An employee who is not provided with notices that comply with the terms of § 195(1)(a) is entitled to damages of $50 for each week that the violations occurred or continued to occur, not to exceed $2,500, plus reasonable costs and attorney's fees.  NYLL § 198(1-b) (effective Apr. 9, 2011).

However, § 195(1)(a) was amended on December 29, 2014, effective February 27, 2015 ("2014 Amendment"), eliminating the requirement that an employer provide each employee with such notice "on or before February first of each subsequent year of the employee's employment

with the employer." *Garcia*, 2019 WL 4640260, at \*4, fn 9.  The 2014 Amendment also increased damages to a maximum of $5,000, accruing at a rate of $50 per workday, plus reasonable costs and attorney's fees.  NYLL § 198(1-b); *See also*, *Junmin Shen v. No. One Fresco Tortillas, Inc.*, 2018 WL 6712771, at \*8, 14 (S.D.N.Y. Nov. 26, 2018).  When an employee has been employed both before and after the 2014 Amendment's effective date, he may seek the maximum recovery of $5,000.  *Ji v. Jling Inc.*, 2022 WL 1080989, at \*9 (E.D.N.Y. Apr. 11, 2022).

Defendants admit they provided Plaintiffs with multiple wage notices, none of which stated that a tip credit allowance would be taken against their wages.  *See*, Wage Notices.  However, they contend that it was unnecessary to include the tip credit allowance since the amount written on the notice is the minimum wage minus the tip credit allowance.  *See*, Defs.' Opp. at 9.  This claim lacks merit since the statute requires that the wage notices list "*allowances, if any, claimed as part of the minimum wage, including tip*[.]"  NYLL § 195(1)(a); See *also, Garcia*, 2019 WL 4640260, at \*5.  Notably, Plaintiffs' wage notices provide a section for Defendants to identify that amount. *See*, Wage Notices.

Defendants' attempt to invoke the affirmative defense under § 198(1-b) also is unavailing. Section 198(1-b) provides an affirmative defense to a § 195(1)(a) claim when the employer either has made complete and timely payments of all wages due or believed in good faith that it was not required to provide the employee with the notice.  *See*, NYLL § 198(1-b).  However, this affirmative defense was instituted through the 2014 Amendment, effective February 27, 2015, and is not retroactive. *See, Garcia*, 2019 WL 4640260, at \*6, fn 12.

Plaintiffs initiated this action on November 8, 2019, and wage notice claims have a six-year limitations period.  NYLL § 198(3).  Section 195(1)(a) became effective April 9, 2011 and § 198(1-b) permits recovery for continuing violations. *Id* §§ 195(1)(a), 198(1-b). Accordingly, the

Court directs its attention to whether any violation of § 195(1)(a) that occurred after April 9, 2011 continued past November 8, 2013.

Here, Cheon began working at Kimganae on December 13, 2012, and his initial wage notice does not list a tip credit allowance. Wage Notices at 4. Hwangbo began working at Kimganae on or about September 15, 2013, and his initial wage notice also fails to list a tip credit allowance. *Id.* at 9. Cho began working at Kimganae around April 2017, and his initial wage notice fails to list a tip credit allowance. *Id*. at 11. Plaintiffs' subsequent notices also fail to list a tip credit allowance. *Id.* at 1-3, 5, 7-8, 10. Since these violations continued without being rectified, both Plaintiffs Hwangbo and Cheon are entitled to at least $2,500, plus reasonable costs and attorney's fees. Any additional amount and Cho's claim depend on the affirmative defense. *See*, *Dudley v. Hanzon Homecare Servs.*, *Inc.*, 2018 WL 481884, at *4 (S.D.N.Y. Jan. 17, 2018).

As discussed above, Defendants failed to provide Plaintiffs with complete and timely payments of all wages due. However, Defendants contend that they acted in good faith since they believed that Plaintiffs were provided adequate notice. *See*, Defs.' Opp. at 9-10. This contention is unavailing since the "affirmative defense applies not when the employer has a good faith belief it complied with § 195(1)(a)'s notice requirements; rather, it applies when the employer has a good faith belief 'that it was not required to.'" *Marin v. Apple-Metro, Inc.*, 2020 WL 6157011, at *7 (E.D.N.Y. Oct. 21, 2020) (citing NYLL § 198(1-b).

At his deposition, Joon was asked whether any regulation governing the notice requirements allowed him to write down only the amount owed. *See*, Joon Dep. at 176. He answered that he did not know of any regulation and only wrote down the rate of pay that an employer is required to pay its employees when taking a tip credit, as obtained from an accountant or the internet. *Id*. at 176-177. Notably, each notice provided to Plaintiffs states: "Notice of

Acknowledgement of Pay Rate and Pay Day *Under Section 195.1 of the New York State Labor Law*." *See*, Wage Notices. Thus, "[t]he fact [D]efendants knew § 195(1)(a) applied to them—and attempted to comply with it—fatally weighs against [their] theory of defense[.]" *Marin*, 2020 WL 6157011, at *7. Accordingly, Plaintiffs' motion for summary judgment under Count Six is granted, and each Plaintiff is entitled to $5,000, plus reasonable costs and attorney's fees.

### B.  Wage Statements

The NYLL also requires that wage statements list all allowances taken against an employee's wages. NYLL § 195(3). "Until February 27, 2015, an employer's failure to provide proper wage statements was a violation for which plaintiffs could receive $100 per work week in damages, with a cap of $2,500[,]" plus reasonable costs and attorney's fees. *Gamero*, 272 F. Supp.3d at 511, 516. Following the 2014 Amendment, an employer who fails to provide the required wage statement is liable to the employee for $250 for each day that the violation occurred or continued to occur, up to a maximum of $5,000, plus reasonable costs and attorney's fees. NYLL § 198(1-d). When an employee is employed both before and after the effective date of this amendment, a failure to provide the required notice entitles the employee to seek the maximum recovery of $5,000. *Ji*, 2022 WL 1080989, at *9.

As with Plaintiffs' wage notices, their wage statements also fail to contain the applicable tip credit allowance. *See*, Wage Statements. For the reasons discussed above as to the wage notices, the affirmative defense under § 198(1-d) is unavailable to Defendants and each Plaintiff is entitled to $5,000, plus reasonable costs and attorney's fees under this claim. Accordingly, Plaintiffs' motion for summary judgment as to Count Seven is granted.

**V.      Wage Deductions and Conversion of Gratuities**

Plaintiffs also seek summary judgment as to Counts Five, Nine, and Ten for unlawful deductions against Plaintiffs' wages and conversion of Plaintiffs' gratuities.[8]  *See*, Pls.' Mem. at 12-14.  The NYLL provides strict standards that an employer must abide by regarding employees' wages and gratuities.  Specifically, the NYLL provides that "[n]o employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency...." NYLL § 193(1)(a).  The statute also prohibits an employer from making "any charge against wages, or requir[ing] an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section…" *Id.* § 193(3).

The NYLL and its corresponding regulations only authorize discrete types of deductions from wages, including Social Security and income tax, or deductions as authorized by the employee for the benefit of the employee.  *Hart*, 967 F. Supp.2d at 935.  Moreover, employers are expressly prohibited from making deductions for "cash shortages or losses" and "fines or penalties for lateness, misconduct, or quitting by an employee without notice."  12 NYCRR § 146–2.7(a)(3)-(4).  Finally, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  NYLL § 196-d.  Based upon the undisputed facts herein, the Court finds that Plaintiffs are entitled to summary judgment under Counts Five, Nine, and Ten.

---

[8] Counts Five and Nine fall within the purview of NYLL § 196-d.

To create a genuine issue of material fact, there must be evidence such that a reasonable jury could return a verdict for Defendants. *Truitt*, 52 F.4th at 85. Instead of citing any admissible evidence in hopes of accomplishing this, Defendants take issue with Plaintiffs' submission of affidavits in support of their motion for summary judgment and contend that Plaintiffs mischaracterize Joon's deposition. *See*, Defs.' Opp. at 11-13. These contentions are meritless. First, parties are allowed to supply affidavits in support of their motions for summary judgment when based "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Second, a careful review of Joon's deposition reveals multiple instances where Joon admitted to violations of the NYLL and NYCRR.

Joon testified that, when waiters committed mistakes or acts of misconduct, they could continue working if they paid a penalty or fine. *See,* Joon Dep. at 149-151. For example, Hwangbo had to pay a $200 penalty for accidentally locking someone in the restaurant after it had closed. *Id*. at 184-186. Penalties for misconduct also included requiring waiters, like Plaintiffs, to buy Starbucks coffee or "things like that" for other employees and Joon. *Id*. at 151, 155. Plaintiffs declare that they were required to buy $50 worth of Starbucks coffee when they were late. *See*, Hwangbo Affidavit at ¶ 11; Cho Affidavit at ¶ 11; Cheon Affidavit at ¶ 11. Defendants also acknowledge that, "when mistakes were made by [P]laintiffs that would have otherwise jeopardized their employment, [D]efendants gave them the option to buy Starbucks [coffee] or pay a fine instead." Defs.' 56.1 at ¶ 17.

Joon also knew how tips were distributed among waiters. Pls.' 56.1 at ¶ 40. Specifically, he testified that waiters, like Plaintiffs, kept and distributed tips amongst themselves. Joon Dep. at 73-74. It follows that requiring Plaintiffs to buy Starbucks coffee or "things like that" for

employees and Joon in order for them to keep their jobs violates § 196-d since it is unlawful for an employer to "demand or accept, directly or indirectly, any part of [an employee's] gratuities." NYLL § 196-d.  Analogously, requiring Plaintiffs to pay fines in order to keep their jobs violated § 196-d since it is illegal "to retain any part of a gratuity[.]"  *Id.*  Defendants also violated § 196-d by reducing Plaintiffs' tips to correct cash shortages that Defendants believed were caused by Plaintiffs' mistakes.  Pls.' 56.1 at ¶ 63; Defs.' 56.1 at ¶ 17.  Notably, because Defendants retained a portion of Plaintiffs' tips, they could not get a tip credit under the FLSA and NYLL. *See*, *Cabrera*, 412 F. Supp.3d at 182 (E.D.N.Y. 2019).

Additionally, Plaintiffs' wage statements note that they were subjected to deductions that ranged from $2.50 to $6.50 per meal.  *See*, Wage Statements.  Food service employers are permitted to take a meal credit against an employee's wages for each meal furnished to that employee.  12 NYCRR § 146-1.9.  Before December 31, 2016, the maximum an employer could credit a meal towards an employee's wage was $2.50 per meal.  *See*, *Jrpac*, 2016 WL 3248493, at *26.  Between December 31, 2016 and December 30, 2019, this amount increased to $3.35 for food service employers with ten or less employees and $3.60 for food service employers with eleven or more employees.  12 NYCRR § 146-1.9.  While each Plaintiff signed an agreement to increase the meal credit that Kimganae could obtain, New York law limits the amount for which an employer may credit each meal towards an employee's wages.  *Id.*

The parties fail to identify the number of employees working at Kimganae at a given time. However, to the extent that Defendants credited themselves with more than the lawful amount, these too were unlawful deductions from Plaintiffs' wages.  Accordingly, Plaintiffs are entitled to summary judgment as to their wage deductions and conversion of gratuities claims under Counts Five, Nine, and Ten.

## VI.    Liquidated Damages

Plaintiffs seek liquidated damages.  *See*, Pls.' Mem. at 14-17.  The FLSA and NYLL each provide for liquidated damages regarding unpaid wages.  29 U.S.C. § 216(b); NYLL § 198(1-a). The Second Circuit interprets liquidated damages under both statutes to exist on the same terms, even though the NYLL provides a different damages calculation.  *Tapia v. Blch 3rd Ave. LLC*, 906 F.3d 58, 60 (2d Cir. 2018).  Employers bear the burden of establishing a good faith basis for believing that its underpayment of wages followed the law in order to avoid liquidated damages. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  This is a difficult burden to meet since "double damages are the norm and single damages the exception." *Id.*  Thus, employers must demonstrate that they took active steps to understand statutory requirements and acted to comply with them.  *Id*.

Here, Defendants fail to satisfy this burden or establish that a genuine issue of material fact exists.  Joon and Hyang indisputably had knowledge of Defendants' efforts to ensure compliance with state and federal law.  Pls.' 56.1 at ¶ 32.  When Joon was asked to identify efforts made to understand state and federal labor laws, he testified only that "the accountant lets me know" every year about the minimum wage increases.  *See*, Joon Dep. at 130-131.  He also testified at his deposition that he searched the minimum wage amount on the internet.  *Id*. 176-177.  Hyang testified that Kimganae had wage posters and obtained some wage documents from accountants to utilize for new employees.  *See*, Hyang Dep. at 29-30, 58-59.

While Defendants contend that these efforts establish a good faith basis to avoid liquidated damages, unsurprisingly they provide no caselaw in support.  *See*, Defs.' Opp. at 13-14.  Courts within the Second Circuit have found comparable measures insufficient to satisfy an employer's difficult burden.  *See, Lin v. Joe Japanese Buffet Restaurant Inc.*, 2021 WL 5810488, at *8

(E.D.N.Y. December 7, 2021); *Chichinadze*, 517 F. Supp.3d at 258-59; *Yu Wei Cao v. Miyama, Inc.*, 2019 WL 4279407, at *10 (E.D.N.Y. Sept. 10, 2019); *Gomez*, 2018 WL 3019102, at *9, 11.

Additionally, Defendants' attempt to distinguish *Chichinadze* is unavailing. Defendants contend that, although the employer in *Chichinadze* consulted an accountant, he had "very little understanding of the tip credit system" since he thought that "there was a 'special' minimum wage" and failed to ascertain a broader understanding of the law. *See*, Defs.' Opp. at 13-14. However, Joon's conduct parallels that of the employer in *Chichinadze* since he also sought the minimum wage amount from an accountant and thought the tip credit established a different minimum wage. *See*, Joon Dep. at 77-78, 130-131. The only other outside research Defendants conducted on this matter was to consult the internet for the minimum wage amount. *Id*. at 176-177. This too is insufficient to satisfy Defendants' high burden. *See*, *Yu Wei Cao*, 2019 WL 4279407, at *10; *See also*, *Gomez*, 2018 WL 3019102, at *9.

Moreover, when asked whether different practices and policies employed at Kimganae were permitted or prohibited under the law, Joon consistently answered that he was unaware. *See,* Joon Dep. at 127, 129-131, 176-177. Defendants also were unable to identify any documented attempts to comply with federal and state minimum wage laws in response to Plaintiffs' production request. *See*, Document Demand, Dkt Entry No. 45-10 at 7; *See also*, Response to Document Demand, Dkt. Entry No. 45-11 at 6. Ignorance of the law or uncertainty about its development fails to demonstrate good faith. *Garcia v. Jonjon Deli Grocery Corp*, 2015 WL 4940107 *6 (S.D.N.Y. Aug. 11, 2015). It follows that Defendants failed to undertake active steps to understand their statutory obligations and act to comply with them. Instead, Defendants consistently engaged in a pattern of behavior that is prohibited by the FLSA and NYLL. Accordingly, Plaintiffs are entitled to liquidated damages.

## VII.   Opt-In Plaintiffs

Finally, Plaintiffs seek summary judgment for Opt-In Plaintiffs regarding the minimum wage, wage notice, and wage statement claims.  *See*, Pls.' Mem. at 3-12.  However, Plaintiffs fail to provide sufficient information for the Court to grant summary judgment in favor of Opt-In Plaintiffs.  Generally, an employee bears the burden of proving that he was not properly compensated for his work.  *See, Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp.3d 285, 292 (S.D.N.Y. 2016).  The Court has no specific information before it regarding when or for how long Opt-In Plaintiffs were employed at Kimganae, other than their employment was somewhere within the bounds of the class definition.  Importantly, Plaintiffs' motion is devoid of any information regarding the wages that Defendants paid Opt-In Plaintiffs while a past court filing only reveals that Defendants informed Plaintiffs that conditional class members' compensation rate was "minimum wage under law."  *See*, Motion to Compel, Dkt. Entry No. 27 at 1.

There is no question that Defendants violated the minimum wage provisions of the FLSA and NYLL as to Plaintiffs.  However, Plaintiffs simply cannot simply bootstrap this determination to obtain summary judgment for Opt-In Plaintiffs.  Plaintiffs have been granted summary judgment for their minimum wage claims because Defendants could not apply a tip credit towards Plaintiffs' wages.  However, the record is silent as to whether Defendants applied a tip credit to Opt-In Plaintiffs' wages.  Joon testified that waiters were paid minimum wage minus the applicable tip credit.  *See*, Joon Dep. at 75-78.  However, the class definition encompasses both waiters and cashiers.  *See*, R&R at 20.  Plaintiffs fail to specify whether Opt-In Plaintiffs were waiters or cashiers.  Nor do they offer evidence showing that Defendants utilized the tip credit for cashiers.

It is possible that Defendants may have provided Opt-In Plaintiffs with the requisite notice under the FLSA and NYLL.  However, the Court cannot make such a determination because,

among other things, Plaintiffs fail to: (1) identify what information was or was not contained within Opt-In Plaintiff's wage notices or wage statements; and (2) provide those documents to the Court or inform the Court that Opt-In Plaintiffs did not receive wage notices or wage statements. Thus, the Court also cannot assess the merits of Opt-In Plaintiff's wage notice and wage statement claims under Counts Six and Seven, respectively. Accordingly, Plaintiffs' motion for summary judgment as to Opt-In Plaintiffs' claims is denied without prejudice with leave to refile since the Court has insufficient information to assess the merits at this juncture. *See, Toiny LLC v. Gill,* 2022 WL 4118520, at *1, 3 (E.D.N.Y. Sept. 9, 2022) (denying an unopposed motion for summary judgment without prejudice because the record, i.e., the complaint, lacked sufficient information and granting plaintiff leave to amend the complaint); *See also*, *Klecher v. Metro. Life Ins. Co.*, 2003 WL 21314033, at *7 (S.D.N.Y. June 6, 2003) (denying the parties' cross-motions for summary judgment without prejudice when they failed to provide the court with sufficient information).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in part and denied in part, as follows:

(1) Kimganae, Hyang Kyum Kim, and Joon Ho Kim are employers under the FLSA and NYLL, and are jointly and severally liable for all damages;

(2) Plaintiffs' motion for summary judgment as to liability under Counts One and Three is granted;

(3) each Plaintiff is entitled to $5,000, plus reasonable costs and attorney's fees under Count Six;

(4) each Plaintiff is entitled to $5,000, plus reasonable costs and attorney's fees under Count Seven;

(5) Plaintiffs' motion for summary judgment as to liability under Counts Five, Nine, and Ten is granted;

(6) Plaintiffs are entitled to liquidated damages; and

(7) Plaintiffs' motion for summary judgment regarding Opt-In Plaintiffs' minimum wage, wage notice, and wage statement claims under Counts One and Three, Six, and Seven, respectively, is denied without prejudice with leave to renew.


SO ORDERED.

Dated:  Brooklyn, New York
        March 30, 2023

                                        _____
                                                /s/
                                        DORA L. IRIZARRY
                                        United States District Judge